# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

JOHN MEADE OGBURN,

                Petitioner,

    v.

FEDERAL BUREAU OF PRISONS;
UNITED STATES MARSHALS
SERVICE; and CASCADE COUNTY
SHERIFF JESSE SLAUGHTER,
                Respondents.

**CV-22-108-GF-BMM**
**CR-04-84-GF-BMM**

**ORDER**

## INTRODUCTION

Petitioner John Meade Ogburn ("Ogburn") petitions the Court for immediate release based upon the proper computation of his Good Conduct Time credits ("GCT"). (Doc. 1.) Ogburn named the United States Federal Bureau of Prisons ("BOP"); United States Marshals Service ("USMS"); and Cascade County Sheriff Jesse Slaughter ("Sheriff Slaughter") as Respondents. BOP opposes the petition. (Doc. 5.)

## FACTUAL AND LEGAL BACKGROUND

Ogburn was convicted of Conspiracy to Distribute Methamphetamine following a two-day jury trial in November 2004. *See United States v. Ogburn*, No.

CR-04-84-GF-BMM, Doc. 43, Doc. 45. The Honorable Charles C. Lovell, United States District Judge for the District of Montana ("Judge Lovell"), sentenced Ogburn to 260 months of Bureau of Prisons ("BOP") custody, followed by 10 years of supervision, on March 3, 2005. (*Id.*, Doc. 64.) Judge Lovell reduced Ogburn's sentence to 240 months on October 8, 2015. (*Id.*, Doc. 134.)

Ogburn has been incarcerated for over 218 months. Ogburn's projected release date is July 4, 2023. *See* Inmate Locator, https://www.bop.gov/inmateloc (last visited May 9, 2023). Ogburn is currently incarcerated at Memphis FCI in Memphis, Tennessee. *Id.* Ogburn alleges that BOP has failed to award the full amount of GCT credits to which he is entitled under the First Step Act of 2018 ("FSA"). (Doc. 11 at 2–3.) Ogburn argues that he should have been released already and that he is being subjected to unlawful detention. (*Id.*) Ogburn initially leveled two additional claims concerning the award of Earned Time Credits under the FSA and Ogburn's placement at BOP prison far from his home in California. Ogburn since has withdrawn these claims. (*Id.* at 2.)

Ogburn filed a pro se motion in his underlying criminal case on September 29, 2022. *Ogburn*, No. CR-04-84-GF-BMM, Doc. 154. The motion requested appointment of counsel for purposes of filing a habeas petition to challenge Ogburn's detention. (*Id.* at 1.) The Court ordered the appointment of counsel on October 27, 2022. (*Id.*, Doc. 155.) Attorney Ryan Aikin ("Aikin") entered his

appearance the same day. (*Id.*, Doc. 156.) The Court appointed Aikin on November 3, 2022. (*Id.*, Doc. 157.) Ogburn filed a habeas petition with the Court on November 12, 2022. (Doc. 1.) Ogburn was detained at the time of filing at Cascade County Detention Center ("CCDC"). BOP then transferred Ogburn to a federal prison in Tennessee, where he remains incarcerated. The Court issued a December 12, 2022 Order directing Ogburn to show cause why the Court should not dismiss for lack of jurisdiction. (Doc. 2.) Ogburn filed a Response on January 6, 2023. (Doc. 3.)

The Court determined that it possessed personal jurisdiction and directed Defendants to respond to Ogburn's petition in a February 2, 2023 Order. (Doc. 4.) BOP filed an Answer on February 27, 2023. (Doc. 5.) BOP urges the Court to deny Ogburn's petition on the basis that the Court lacks jurisdiction and that Ogburn has failed to exhaust his administrative remedies. Ogburn filed a Reply on March 20, 2023. (Doc. 11.)

## LEGAL STANDARD

A federal court may grant a writ of habeas corpus to a person in custody if that custody proves a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An incarcerated person may challenge the manner, location, or conditions of their sentence's execution pursuant to § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). "Custody" for the purposes of the

statute encompasses incarceration attendant to a federal conviction. 28 U.S.C. § 2241(c)(3).

## DISCUSSION

### A. Whether the Court Possessed Jurisdiction at the Time Ogburn Filed His Habeas.

Ogburn asserts that he properly filed his habeas petition in the District of Montana, his district of confinement, and properly named as a Respondent his immediate custodian, the CCDC warden, among other Respondents. (Doc. 11 at 7–8.) Ogburn argues that jurisdiction attached at the time of filing. (*Id.*) BOP contends that jurisdiction over Ogburn's petition never vested in the Court. (Doc. 5 at 9–10.) BOP asserts that Ogburn was classified as being under the direct supervision and custody of BOP's Seattle Residential Reentry Management field office when he was detained at CCDC. (*Id.* at 8.) BOP argues that Ogburn needed to have filed his petition in the Western District of Washington. (*Id.* at 8–9.)

Challenges to a person's "present physical confinement" qualify as "core" habeas petitions for purposes of determining jurisdiction and venue. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). *Padilla* requires core habeas petitioners to name as the respondent their "immediate custodian" and to file the petition in their district of confinement. *Id.* at 435–36. The Court has identified no binding Ninth Circuit precedent as to the proper respondent in the context of core habeas petitions brought by people incarcerated in local facilities pursuant to BOP contracts.

4

The vast majority of decisions by federal courts in the Ninth Circuit considering § 2241 habeas jurisdictional and venue issues have arisen in the context of petitions brought by non-citizens in civil immigration detention. This body of case law proves minimally instructive outside the context of immigration law. The legal standard for immigration habeas petitions differs from that applicable to U.S. citizens challenging the execution of a criminal sentence. The U.S. Supreme Court in *Padilla* explicitly declined to determine whether its holdings as to the proper respondent in habeas cases may not apply in the context of immigration habeas petitions. 542 U.S. at 435 n.8; *see also Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases in which district courts declined to apply *Padilla* in the context of habeas petitions brought by detained immigrants).

In the absence of a bright-line rule regarding *Padilla*'s application to Ogburn's circumstances, the Court finds the background principles animating habeas jurisprudence particularly relevant. The U.S. Supreme Court has observed that habeas case law has developed "from the premise that habeas corpus is not a static, narrow, formalistic remedy, but one which must retain the ability to cut through barriers of form and procedural mazes." *Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara Cty.*, 411 U.S. 345, 350 (1973) (internal quotations omitted). *Hensley* further affirmed that "[t]he very nature of the writ

demands that it be administered with the initiative and flexibility essential to [i]nsure that miscarriages of justice within its reach are surfaced and corrected." *Id.*

*Hensley* counsels in favor of finding jurisdiction in this case. Ogburn filed his habeas petition in the District of Montana when he was incarcerated at CCDC. The Court agrees with Ogburn has filed his habeas within his district of confinement. Ogburn named Sheriff Slaughter, the CCDC warden, as one of the Respondents. (Doc. 1.) The Court declines BOP's invitation to impose "barriers of form and procedural mazes" upon Ogburn by dismissing his petition for failure to have filed his petition in the Western District of Washington. *Hensley*, 411 U.S. at 350. Sheriff Slaughter, CCDC warden, qualified as Ogburn's immediate custodian at the time of filing. *Padilla*, 542 U.S. at 435–36. Ogburn properly filed his § 2241 habeas petition in the District of Montana. *Id.* Jurisdiction vested with the Court when Ogburn filed the petition.

## B. Whether the Court Lost Jurisdiction When BOP Transferred Ogburn to Tennessee.

BOP transferred Ogburn to a facility in the Western District of Tennessee after he filed the habeas petition. BOP argues that even had the Court possessed jurisdiction at the time of filing, the transfer destroyed that jurisdiction. (Doc. 5.) BOP contends that Ogburn's current immediate custodian lies in Tennessee, outside the reach of the Court's jurisdiction. Ogburn asserts that his post-filing transfer has no effect on the Court's jurisdiction. (Doc. 11 at 9–10.)

6

The Court's February 2, 2023 Order already determined that the Court retains jurisdiction following Ogburn's out-of-district transfer. (Doc. 4 at 2–3.) The Court now affirms and elaborates upon that ruling. The U.S. Supreme Court concluded in *Ex parte Endo* that the original district court retained jurisdiction despite the petitioner's transfer.   323 U.S. 283, 304–05 (1944). The U.S. Supreme Court explained "that when the Government moves a habeas petitioner after she files a petition naming her immediate custodian, the district court retains jurisdiction[.]" *Id.*

The court of initial jurisdiction additionally "may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 307. The U.S. Supreme Court reiterated in *Strait v. Laird* that the court of initial filing retains jurisdiction after a habeas petitioner's transfer as long as jurisdiction proved proper upon filing. 406 U.S. 341, 345 (1972). *Strait* emphasized that to argue that a federal entity were "amenable to process only in [the transferee district] . . . would be to exalt fiction over reality." 406 U.S. at 344.

The Court acknowledges a post-*Padilla* split on the question of post-transfer personal jurisdiction among federal district courts in the Ninth Circuit. Many reviewing courts have dismissed core habeas petitions after transfer for lack of personal jurisdiction. Two recent district-court cases in the Ninth Circuit provide particularly helpful analysis and support, however, for the proposition that the court

in which jurisdiction vested maintains that jurisdiction after BOP transfers a habeas petitioner.

A district judge for the District of Arizona determined in *Long v. Baltazar* that jurisdiction vested at the time of a § 2241 habeas petition's filing and was not destroyed by the petitioner's out-of-district transfer. No. CV-18-00520-TUC-RM (EJM), 2020 WL 6162923, at *1 (D. Ariz. Sept. 17, 2020), *report and recommendation adopted*, No. CV-18-00520-TUC-RM, 2020 WL 6161717 (D. Ariz. Oct. 21, 2020). The petitioner in *Long* filed his habeas petition in the District of Arizona and named his then-immediate custodian, the warden of USP-Tucson. *Id.* BOP then transferred the petitioner to USP-Terre Haute in Indiana. *Id.*

The district court rejected BOP's argument that the transfer divested jurisdiction, noting that incarcerated people "may be transferred to a different institution at any time" and expressing support for "avoiding a 'ping-pong' effect where the § 2241 petition is transferred to a new court each time the petitioner is designated to a new institution." *Id.* at *3. The district court substituted the warden at the Indiana facility pursuant to Fed. R. Civ. P. 25. *Id.* at *1.

A district judge for the District of Hawaii similarly determined in a March 2023 decision that jurisdiction remains proper in the court in which the petitioner brought their petition before being transferred. *Marler v. Derr*, No. CV 22-00240 JAO-RT, 2023 WL 2563147, at *3 (D. Haw. Mar. 17, 2023). The district judge in

*Marler* observed that "at the time of filing, Petitioner filed his Petition in the proper district court and named the proper respondent." The district judge affirmed that "'jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change[.]'" *Id.* (citing and quoting *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)).

As the Court noted in the February 2, 2023 Order, maintaining jurisdiction after transfer "makes sense in practice." (Doc. 4 at 3.) This jurisdictional interpretation "prevents the untenable situation of petitioners 'wandering endlessly from one jurisdiction to another in search of a proper forum only to find that it lies elsewhere.'" (*Id.* (quoting *Eisel v. Sec'y of the Army*, 477 F.2d 1251, 1258 (D.C. Cir. 1973) and citing *Griffin v. Ebbert*, 751 F. 3d 288, 290 (9th Cir. 2014) (collecting cases)). The Court affirms its previous determination that Ogburn's transfer does not destroy the Court's jurisdiction. *Ex parte Endo*, 323 U.S. at 304–05; *Strait*, 406 U.S. at 345; *Long*, 2020 WL 6162923, at *1; *Marler*, 2023 WL 2563147, at *3.

### C. Whether Ogburn Has Exhausted His Administrative Remedies.

Ogburn submitted a Request for Administrative Relief to the Warden of USP Big Sandy, Kentucky, where he was then incarcerated, on November 3, 2020. (Doc. 11-2 at 1.) Ogburn alleged that he was being wrongfully denied GCT to which he was entitled following the passage of the FSA. (*Id.*) The Warden of USP Big Sandy denied the request on November 13, 2020. (*Id*. at 2.) Ogburn appealed the denial to

the BOP Mid-Atlantic Regional Director on January 5, 2021. (*Id*. at 3.) BOP denied the appeal on March 30, 2021. (*Id*. at 4.) Ogburn then appealed to the BOP General Counsel on May 5, 2021. (*Id*. at 5.)

The BOP General Counsel's Office returned Ogburn's May 2021 appeal on the basis that he had submitted it on two sheets rather than one sheet of paper. (*Id.* at 4.) Ogburn alleges that he resubmitted his appeal on a single sheet of paper. (*Id.*) BOP rejected the appeal as untimely. (*Id.*) BOP instructed Ogburn to resubmit his appeal with documentation justifying the untimeliness. (*Id.*) Ogburn claims that the appeal was untimely only because BOP rejected his initial, timely appeal. (*Id.*) Ogburn received the returned second appeal at USP Atlanta, where he was temporarily housed while in transit from USP Big Sandy to FCI Memphis. (*Id.*) Ogburn was not permitted to carry the letter with him while in transport and had to turn it over to BOP personnel. (*Id.*) BOP never returned the letter to Ogburn. (*Id.*)

Ogburn argues that he has exhausted his administrative remedies. Ogburn requested relief through the BOP, including appeals to the Regional Director and BOP General Counsel. (Doc. 11 at 2.) Ogburn argues that he completed the exhaustion process to the best of his ability and that circumstances beyond his control prevented him from responding to BOP's second denial of his appeal. (*Id.* at 4.) Ogburn argues, in the alternative, that if the Court determines that he has failed to exhaust his administrative remedies, the Court should excuse the failure. Ogburn

contends that BOP's responses demonstrate that it has wrongfully denied Ogburn GCT pursuant to an official BOP policy that is apparently inconsistent with the FSA. (*Id.* at 2–3.) Ogburn also asserts that requiring him to restart the grievance process would prejudice him by subjecting him to further illegal detention. (*Id.* at 3.)

BOP argues that Ogburn's grievance about his GCT computation proves moot. The Government notes that Ogburn's GCT release date has been updated by the BOP Designation and Sentence Computation Center ("DSCC") on March 3, 2022, September 19, 2022, and October 3, 2022. (Doc. 5 at 15.) BOP additionally highlights that BOP updated Ogburn's GCT calculation "pursuant to FSA" on November 21, 2019. (*Id.*)

The Court determines that Ogburn has exhausted his administrative remedies, or, at the very least, that any failure to exhaust is excused. Ogburn diligently pursued BOP's administrative process. The Court declines to fault Ogburn for BOP's failure to return appeal-related documents to him after transfer. BOP's rejection of Ogburn's appeal for having been submitted on two pages rather than one page also appears to lack justification and potentially have frustrated Ogburn's ability to complete the exhaustion process. In the alternative, BOP's adherence to outdated, pre-FSA policy supports a finding that the administrative review process would be futile. The Court will proceed to evaluate the merits of Ogburn's GCT claim.

**D. Whether Ogburn Prevails on the Merits of His GCT Claim.**

Ogburn argues that he has been denied 139 days of GCT credits. (Doc. 11 at 16.) Ogburn contends that BOP's responses to Ogburn's administrative requests suggest that even after the FSA came into effect, BOP has continued to calculate his GCT using the outdated formula with a GCT maximum of 47 days rather than 54 days per year. (*Id.*)

BOP has leveled substantive challenges to Ogburn's now-withdrawn FSA earned-time credit argument. (Doc. 5 at 17–19.) BOP also argues against transfer of Ogburn's petition to the Western District of Tennessee, should the Court agree that it lacks jurisdiction. (*Id.* at 19–20.) BOP has not, however, rebutted Ogburn's substantive GCT arguments. The Court agrees with Ogburn that BOP has failed properly to award 139 days of GTC credits.

The BOP Mid-Atlantic Regional Director's January 5, 2021 denial of Ogburn's appeal states that BOP based Ogburn's sentence computation upon BOP Program Statement 5880.28, Sentence Computation Manual ("CCCA of 1984"). (*Id.* at 24.) The CCCA of 1984 has not been updated since 1999. Ogburn's total available GCT over the course of his sentence was 1080 days (20 years multiplied by 54 days per year). (*Id.* at 15.) BOP has disallowed Ogburn 496 days of GCT. BOP has allowed 445 days of earned and projected GCT. The sum of this GCT is 941 days. The difference between the total available GCT and BOP's calculation is 139 days,

indicating that BOP has failed to account for the additional 139 days of GCT that became available to Ogburn with the passage of the FSA. (*Id.* at 15–16.)

## CONCLUSION

The Court will grant, in part, Ogburn's habeas petition. Ogburn's projected release date is July 4, 2023. Ogburn will be released in 56 days, less than the 139 days of GTC owed to Ogburn. In light of Ogburn's fast-approaching release date, the Court deems it imprudent to order Ogburn's immediate release without any details about a release plan for Ogburn in place. The Court instead will reduce Ogburn's term of supervised release from 10 years to 3 years. The Court intends this reduction in the period of Ogburn's supervised release to address the discrepancy between Ogburn's lawful sentence and the length of time he ultimately will serve. *See Marler*, 2023 WL 2563147, at *4 (citing and quoting *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001)). The Court additionally will substitute Respondent Cascade County Sheriff Slaughter for Ogburn's current immediate custodian in Tennessee, FCI Memphis Warden Myron L. Batts, pursuant to Fed. R. Civ. P. 25. *See Long*, 2020 WL 6162923, at *1.

## ORDER

Accordingly, **IT IS ORDERED:**

13

1.  Ogburn's Petition for a Writ of Habeas Corpus pursuant to § 2241 (Doc. 1) is hereby **GRANTED in part and DENIED in part.**

2. Ogburn's September 29, 2022 Pro Se Motion (Doc. 154) in his underlying criminal case, *United States v. Ogburn*, No. CR-04-84-GF-FMM, is hereby **GRANTED in part and DENIED in part.**

3. Ogburn's amended judgment in his underlying criminal case shall be amended further to reflect a reduction in Ogburn's term of supervised release from 10 years to 3 years. *See* Amended Judgment, *United States v. Ogburn*, No. CR-04-84-GF-FMM, Doc. 134 (D. Mont. Oct 8, 2015).

4.  Cascade County Sheriff and CCDC Warden Jesse Slaughter shall be substituted as a Respondent by Ogburn's current immediate custodian in Tennessee, FCI Memphis Warden Myron L. Batts, pursuant to Fed. R. Civ. P. 25.

5. The Clerk shall enter judgment in favor of Ogburn in his civil habeas action forthwith.

DATED this 12th day of May, 2023.

_____
Brian Morris, Chief District Judge
United States District Court